**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

SARAH J. RADER                                                                    PLAINTIFF

v.                                          NO.  5:07cv00318 SWW-JWC

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                        DEFENDANT

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

This recommended disposition has been submitted to United States District Judge Susan Webber Wright.  The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection.  The objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations.  A copy must be served on the opposing party.  The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

**RECOMMENDED DISPOSITION**

Plaintiff, Sarah J. Rader, has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for Supplemental Security Income (SSI), based on disability.  Both parties have submitted appeal briefs and the case is ready for decision.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error.  Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence

that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision.  Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

On her application for SSI, Plaintiff alleged she was disabled by seizures/blackouts. (Tr. 58.)  On a Disability Report - Adult, she alleged she was limited in her ability to work by headaches, seizures, pain in her right arm and hip and blackouts.  (Tr. 115.)  The Commissioner found she was not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing at which Plaintiff, a neighbor and a vocational expert testified, the Administrative Law Judge[1] (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through December 6, 2005, the date of his decision.  (Tr. 28.)  On November 5, 2007, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (Tr. 5-8.)  Plaintiff then filed her complaint initiating this appeal (doc. 2).

---

[1]The Hon. Everet Dail Stiles.

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Plaintiff was 48 years old at the time of the hearing.  (Tr. 537.)  She completed the ninth grade in school.  (Tr. 121, 259, 537.)  She had no past relevant work.  (Tr. 18, 101, 115, 116.)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process.  20 C.F.R. § 416.920(a)(4) (2006).  He found that Plaintiff had not engaged in substantial gainful activity since her onset date.  (Tr. 18.)   He found that she had a hearing loss, pseudoseizures,[2] headaches, hypertension, depression (not otherwise specified), tendinitis and a history of menometrorrhagia.  Id.  He found she had a "severe" impairment, but did not have an impairment or combination of impairments that

---

[2]A pseudoseizure is a hysteric convulsion.  PDR Medical Dictionary 1592 (3d ed. 2006).  A hysteric convulsion is a convulsion resulting from conversion disorder (for which hysteria is an older form).  Id. at 439.

> The essential feature of Conversion Disorder is the presence of symptoms or deficits affecting voluntary motor or sensory function that suggest a neurological or other general medical condition (Criterion A).  Psychological factors are judged to be associated with the symptom or deficit, a judgment based on the observation that the initiation or exacerbation of the symptom or deficit is preceded by conflicts or other stressors (Criterion B).  The symptoms are not intentionally produced or feigned, as in Factitious Disorder or Malingering (Criterion C). Conversion Disorder is not diagnosed if the symptoms or deficits are fully explained by a neurological or other general medical condition, by the direct effects of a substance, or as a culturally sanctioned behavior or experience (Criterion D).  The problem must be clinically significant as evidenced by marked distress; impairment in social, occupational, or other important areas of functioning; or the fact that it warrants medical evaluation (Criterion E). Conversion Disorder is not diagnosed if symptoms are limited to pain or sexual dysfunction, occur exclusively during the course of Somatization Disorder, or are better accounted for by another mental disorder (Criterion F).  Conversion symptoms are related to voluntary motor or sensory functioning and are thus referred to as "pseudoneurological."  Motor symptoms or deficits include impaired coordination or balance, paralysis or localized weakness, aphonia, difficulty swallowing or a sensation of a lump in the throat, and urinary retention.  Sensory symptoms or deficits include loss of touch or pain sensation, double vision, blindness, deafness, and hallucinations. Symptoms may also include seizures or convulsions.   The more medically naive the person, the more implausible are the presenting symptoms. More sophisticated persons tend to have more subtle symptoms and deficits that may closely simulate neurological or other general medical conditions.

Diagnostic and Statistical Manual of Mental Disorders 492-93 (4th ed., Text Revision 2000).

met or equaled a Listing.  Id.  He judged that Plaintiff's subjective allegations were not borne out by the overall record and were not fully credible.  (Tr. 25.)

The ALJ found that Plaintiff retained the residual functional capacity for "at least the wide range of the medium work activity" and she was further limited to work where interpersonal contact was incidental to the work performed, complexity of tasks was learned and performed by rote with few variables and little judgment involved and supervision required was simple, direct and concrete; in other words, unskilled work.  (Tr. 26.)  He determined that she had no past relevant work.  (Tr. 18.)  The ALJ correctly noted that once Plaintiff was determined to have no past relevant work, the burden shifted to the Commissioner to show a significant number of jobs within the economy that she could perform, given her residual functional capacity, age and education.  (Tr. 27.)  Based on the testimony of a vocational expert witness in response to a hypothetical question, the ALJ found that there were a significant number of jobs in the economy which Plaintiff could perform, notwithstanding her limitations, for example, nut and bolt assembler.  (Tr. 26-27.) Consequently, the ALJ concluded that Plaintiff was not disabled.  (Tr. 27.)

Plaintiff argues that the ALJ erred by substituting his opinion for that of her treating physician (Br. 17-19) and in not affording controlling weight to the physician's opinion (Br. 19-21).   On February 13, 2004, J.C. Robertson, M.D., Plaintiff's treating general practitioner, completed a five-page form entitled Seizures Residual Functional Capacity Questionnaire.  (Tr. 286-90.)  It noted diagnoses of seizure d/o,[3] seizure epilepticus.  (Tr. 286.)  The form described very significant restrictions, including an inability to take a bus alone (Tr. 288) and the need to sometimes take five or more unscheduled thirty-minute breaks during an eight-hour workday (Tr. 289).  He indicated that she was incapable of even a "low stress" job because she could not concentrate.  Id.

---

[3]Disorder.  Neal M. Davis, Medical Abbreviations: 15,000 Conveniences at the Expense of Communications and Safety, 103 (10th ed. 2001).

The ALJ considered Dr. Robertson's answers on the questionnaire, but found them unpersuasive in view of the overall evidence.  (Tr. 21-22.)  In June 2004, Dr. Robertson saw Plaintiff at the Emergency Room.  (Tr. 330.)  He noted her past medical history: "Seizure disorder which is questionable."  (Tr. 330.)  He also observed, "There has been some question about this patient's history of seizures.  There is a question that this might be actually pseudoseizures so Delta Counseling was consulted for further evaluation."  (Tr. 331.)  There is no evaluation by Delta Counseling in the record.

J. Sue Frigon, M.D., a neurologist, saw Plaintiff at Jefferson Regional Medical Center August 12, 2003.  (Tr. 252-54.)  Plaintiff had been admitted for seizure activity.  (Tr. 252.)  A relative noted similar symptoms with stress.  Id.  Dr. Frigon's impression was "new onset seizure disorder or more than likely a pseudoseizure[,] however, we are going to continue to monitor her.  There has been absolutely no seizure activity since she arrived here."  (Tr. 253.)   Dr. Frigon ordered an electroencephalogram (EEG).  (Tr. 255.)  Her impression, upon reading the report:

> The jerking activity that is described above is somewhat concerning.  There is no focal activity and there is no post ictal slowing identified.  There is no associated spike activity.   The rhythmical delta activity which I have described above is the only activity seen.  This EEG may be consistent with a seizure disorder, however I recommend further monitoring of her activity to fully establish that this is ictal activity.

Id.

James E. Young, M.D., saw Plaintiff at the Emergency Room of McGehee Desha County Hospital May 7, 2004, after she had a seizure at home.  (T. 366-67.)  He observed, "While there [in the emergency room] she exhibited some generalized jerking movement which appeared voluntary and not seizure activity."  (Tr. 366.)  His impression, in pertinent part: "Seizure versus pseudoseizure."  (Tr. 367.)

On July 8, 2004, another EEG showed "no outward manifestation of seizure activity" and "no significant spike activity."  (Tr. 499.)   Dr. Frigon interpreted the results as

demonstrating non-epileptiform activity triggered by light stimulation.  Id.  A psychiatric

consult was obtained.  (Tr. 493-94.)  R. Greg Wooten, M.D., the psychiatrist, indicated that

he would help Plaintiff learn how to deal with stress if a seizure disorder and other medical

causes were ruled out.  (Tr. 493.)  On July 9, 2004, Syed Masood, M.D., M.R.C.P., noted

Plaintiff's vital signs were completely stable and her laboratory results were "quite normal."

(Tr. 488.)  After consulting with Dr. Frigon, he told Plaintiff to discontinue both seizure

medications.  Id.  He also arranged for her to follow-up with Dr. Wooten.  Id.  Plaintiff

testified that she had no seizure since discontinuing her seizure medication.  (Tr. 539.)

Substantial evidence supports the weight given the Seizures Residual Functional Capacity

Questionnaire by the ALJ.

        Plaintiff also argues that the hypothetical question to the vocational expert was

inadequate and did not include all of her limitations.  (Br. 21-23.)  Plaintiff's attorney was

present at the administrative hearing.  (Tr. 536.)  He had the opportunity to request that the

ALJ restate the hypothetical question or to cross-examine the vocational expert himself,

which he did.  (Tr. 552.)  He cross-examined the vocational expert concerning the effect

of moderate or greater difficulty maintaining concentration, persistence or pace.  Id.  He

also inquired as to the specific vocational preparation for the job as assembler that the

vocational expert had identified.  Id.  He did not, however, cross-examine about any of the

limitations that Plaintiff now complains were omitted from the ALJ's hypothetical question.

Id.  Such a failure to raise the argument at the administrative level ordinarily prevents a

party from raising it in judicial proceedings.  Weikert v. Sullivan, 977 F.2d 1249, 1254 (8th

Cir. 1992); accord, Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999).

        Plaintiff complains that the hypothetical did not mention her hearing loss.  (Br. 21.)

She contends the ALJ should have included tendinitis, osteoarthritis and hypertension in

the hypothetical question.  (Br. 23.)  However, none of those limitations were listed by

Plaintiff as underlying reasons that she could not work.  (Tr. 58, 115.)  That is significant.

Box v. Shalala, 52 F.3d 168, 171 (8th Cir. 1995) (significant that plaintiff did not claim disability based on obesity in application for benefits); see Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir. 1993) (same, mental impairment).  There is no medical evidence that these additional limitations would more than minimally affect her ability to perform medium work. To the contrary, although she did not wear prescribed hearing aids, she was able to engage in conversations with medical personnel and also to do so during the hearing.  The ALJ properly included in his question the impairments and functional restrictions that are supported by the record, which is all that is required.  Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994).

It is not the task of this Court to review the evidence and make an independent decision.  Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.  The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ.  E.g., Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996); Pratt v. Sullivan, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence.  There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.  Richardson v. Perales, 402 U.S. at 401; see also Reutter ex rel. Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004).  The Commissioner's decision is not based on legal error.

Therefore, the Magistrate Judge recommends that the decision of the Commissioner be affirmed and that Judgment be entered for Defendant dismissing this action with prejudice.

DATED this 14th day of November, 2008.

_____
UNITED STATES MAGISTRATE JUDGE